**Affirmed and Memorandum Opinion filed June 16, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00584-CV

## IN THE INTEREST OF M.L.R.S., A CHILD

**On Appeal from the 309th District Court
Harris County, Texas
Trial Court Cause No. 2019-70099**

## M E M O R A N D U M   O P I N I O N

Appellee A. M. ("Great-Grandmother") filed a petition requesting that she be appointed sole managing conservator of her great-granddaughter, Mary.[1] After a bench trial, the trial court signed a July 13, 2000 order granting Great-Grandmother's requested relief and appointing Mary's mother, appellant A. N. ("Mother"), as Mary's possessory conservator. Mother filed this appeal.[2] For the

---

[1] We refer to the child involved in this case using a pseudonym. *See* Tex. Fam. Code Ann. § 109.002(d).

[2] Mother filed a compliant appellant's brief on December 12, 2021, after this court on October 5, 2021 dismissed Mother's appeal for want of prosecution. This court granted a rehearing and reinstated Mother's appeal.

reasons below, we affirm.

## BACKGROUND

In September 2019, Great-Grandmother filed a petition requesting immediate possession of or access to Mary. *See* Tex. Fam. Code Ann. § 153.432. Great-Grandmother filed an amended petition requesting that she be named Mary's sole managing conservator. *See id*. § 153.005.

In June 2020, a two-day bench trial was held via a Zoom videoconference. Following the conclusion of trial, the trial court signed an "Order in Suit Affecting the Parent-Child Relationship" and appointed Great-Grandmother as Mary's sole managing conservator. In its order, the trial court also stated that "credible evidence was presented to establish that [Mother] has engaged in a history or pattern of past or present history of family violence directed against" Mary. The trial court appointed Mother as Mary's possessory conservator.

The trial court issued findings of fact and conclusions of law. Mother timely appealed.

## ANALYSIS

Mother raises four issues on appeal which, liberally read, appear to assert two main arguments: (1) Great-Grandmother lacked standing to pursue her suit,[3] and (2) the trial court erred by appointing Great-Grandmother as Mary's sole managing conservator. The Office of the Attorney General of Texas did not file a

---

[3] We note that Mother asserts this argument by challenging the trial court's denial of her motion to dismiss Great-Grandmother's petition. Mother's motion to dismiss is not included in the appellate record. However, because standing is a threshold issue, we may address it for the first time on appeal. *See In re Vogel*, 261 S.W.3d 917, 920-21 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding); *see also In re K.S.*, 492 S.W.3d 419, 424 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (examining the appellant's standing arguments even though the appellant's motion to dismiss was not included in appellate record).

responsive appellee's brief.  We address Mother's arguments below.

## I. Standing

### A. Standard of Review and Governing Law

Because standing is a component of subject-matter jurisdiction, we must determine whether it exists in order to determine our authority to decide the merits of the parties' claims. *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018).  The party asserting standing bears the burden of alleging facts sufficient to demonstrate the court's jurisdiction. *In re R.I.*, 610 S.W.3d 581, 586 (Tex. App.—Tyler 2020, no pet.).  Issues of standing are reviewed *de novo* on appeal. *Id.*

Texas confers standing to bring a suit affecting the parent-child relationship ("SAPCR") to individuals who meet the statutory framework set out in the Texas Family Code. *In re K.S.*, 492 S.W.3d 419, 423 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).  A party seeking the conservatorship of a child must have standing to seek such relief. *Madore v. Strader*, No. 14-20-00147-CV, 2021 WL 4617936, at *4 (Tex. App.—Houston [14th Dist.] Oct. 7, 2021, no pet.) (mem. op.).

A grandparent related by blood can meet the standing requirements to bring a SAPCR by providing "satisfactory proof" to the trial court that the "order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." Tex. Fam. Code Ann. § 102.004(a)(1).  "Satisfactory proof" is based on a preponderance-of-evidence standard applied to the facts existing when the suit was filed. *In re K.D.H.*, 426 S.W.3d 879, 883-84 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

When a grandparent claims standing under section 102.004(a)(1), the

grandparent need only file a petition and allege the order requested is necessary because the child's present circumstances would significantly impair the child's physical or emotional development. *See id.* at 884. "In such a case, pleading a proper basis for standing is sufficient to show standing, unless a party challenges standing and submits evidence showing the non-existence of a fact necessary for standing." *Id.*

## B. Application

Here, in its findings of fact and conclusions of law, the trial court found that Great-Grandmother had standing to pursue her suit under Texas Family Code sections 102.003(a)(9) and 102.004(a)(1). *See* Tex. Fam. Code Ann. §§ 102.003(a)(9), 102.004(a)(1). Because we conclude Great-Grandmother made the showing necessary to establish standing under section 102.004(a)(1), we need not address whether she also has standing under section 102.003(a)(9). *See, e.g.*, *In re G.B.*, No. 05-21-00463-CV, 2021 WL 4071152, at *2 n.4 (Tex. App.—Dallas Sept. 7, 2021, no pet.) (mem. op.).

In her amended petition, Great-Grandmother requested to be named Mary's sole managing conservator and asserted the appointment was "necessary because [Mary's] present circumstances would significantly impair [Mary's] physical health or emotional development." To support this allegation, Great-Grandmother attested in her affidavit that:

- In July 2019, she was sent pictures of Mary showing bruises on Mary's face and body. Great-Grandmother said she was informed Mother "whipped" Mary.

- Mother was arrested for felony injury to a child in connection with the injuries photographed on Mary. Mother's court date was scheduled for September 2019.

- Mother has repeatedly "beaten and slapped" Mary since Mary was

4

two years old.

- Mother would call Mary expletives.
- Mother would deny Mary medical attention.
- Mother has a history of "extremely violent" behavior.
- Mother previously hit her mother ("Grandmother") with an automobile.

Great-Grandmother also filed with her petition an emergency protective order signed August 21, 2019, which forbade Mother from contacting or communicating with Mary.

These attestations find additional support from the testimony heard at the parties' bench trial. *See In re K.S.*, 492 S.W.3d at 424 (reviewing the reporter's record from the bench trial in considering the appellant's standing challenge). Great-Grandmother testified that, in July 2019, she saw a bruise on Mary's face that looked like Mary "had gotten hit with a belt across her face." Great-Grandmother also recalled seeing bruises on Mary's neck, back, and thighs. Great-Grandmother testified that Mother "slap[s]" Mary, tells her "she stinks", and calls her expletives.

The evidence admitted during this line of testimony included (1) pictures of Mary showing bruises on her face, neck, and back; (2) the August 2019 complaint charging Mother with felony injury to a child; (3) a high bond request issued in connection with the felony charge stating that Mother "has a history of violence"; and (4) the August 2019 emergency protective order prohibiting Mother from contacting or communicating with Mary.

Great-Grandmother's affidavit and the evidence from the bench trial support the trial court's finding that Great-Grandmother had standing under section 102.004(a)(1) to pursue her conservatorship claim. Specifically, the affidavit and

evidence provide "satisfactory proof" that the requested conservatorship order was necessary because Mary's "present circumstances would significantly impair [her] physical health or emotional development." *See* Tex. Fam. Code Ann. § 102.004(a)(1).

Citing Texas Family Code section 153.432, Mother argues that Great-Grandmother failed to establish that Mother "had denied [Great-Grandmother] access [to Mary] prior to the filing of the suit for grandparent's access" as necessary to establish standing.

Section 153.432 prescribes the showing necessary for a grandparent to establish standing to seek possession of or access to a child and states:

> [T]he person filing the suit must execute and attach an affidavit on knowledge or belief that contains, along with supporting facts, the allegation that denial of possession of or access to the child by the petitioner would significantly impair the child's physical health or emotional well-being. The court shall deny the relief sought and dismiss the suit unless the court determines that the facts stated in the affidavit, if true, would be sufficient to support the relief authorized under Section 153.433.

Tex. Fam. Code Ann. § 153.432(c). But section 153.432 applies to a grandparent's suit requesting possession of or access to a grandchild — not to a suit seeking a conservatorship. *See id*. § 153.432(a) ("A biological or adoptive grandparent may request ***possession of or access to*** a grandchild by filing . . . .") (emphasis added). Here, Great-Grandmother's amended petition included a conservatorship claim, the standing for which can be maintained according to the standards set by section 102.004. *See id*. § 102.004(a) ("a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit ***requesting managing conservatorship*** if there is satisfactory proof to the court that . . . .") (emphasis added); *see also, e.g.*, *In re M.B.*, No. 09-19-00247-CV, 2019

6

WL 4865197, at *5 (Tex. App.—Beaumont Oct. 3, 2019, no pet.) (mem. op.) (holding that "section 153.432 of the Texas Family Code does not apply to Grandfather's claims" because "Grandfather's petition includes a conservatorship claim"); *In re C.D.M.*, No. 11-15-00319-CV, 2016 WL 5853261, at *4 (Tex. App.—Eastland Oct. 6, 2016, no pet.) (mem. op.) (holding that grandparents were not required to satisfy section 153.432's affidavit requirements where they "were seeking more than just possession and access — they were seeking to be appointed managing conservators of the child").

Because Great-Grandmother established standing under Texas Family Code section 102.004(a)(1), she was not required to satisfy section 153.432's requirements to pursue her conservatorship claim. *See* Tex. Fam. Code Ann. § 153.432; *see also In re M.B.*, 2019 WL 4865197, at *5; *In re C.D.M.*, 2016 WL 5853261, at *4. We overrule Mother's challenge to Great-Grandmother's standing.

## II.     Conservatorship

In her second issue, Mother contends the trial court abused its discretion by appointing Great-Grandmother as Mary's sole managing conservator and by appointing Mother as Mary's possessory conservator.

### A.     Standard of Review and Governing Law

A trial court has broad discretion to decide the best interest of the child in matters involving custody, visitation, and possession. *In re Marriage of Harrison*, 557 S.W.3d 99, 120 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). We review a trial court's conservatorship decision for an abuse of discretion. *Id.* at 121; *see also F.A.B. v. Dep't of Family & Protective Servs.*, No. 01-10-00930-CV, 2012 WL 5310024, at *1 (Tex. App.—Houston [1st Dist.] Oct. 25, 2012, no pet.)

(mem. op.) (applying an abuse of discretion standard to review the appointment of a non-parent as child's sole managing conservator). A trial court abuses its discretion when its decision is unreasonable, arbitrary, or without reference to guiding rules or principles. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

We make this determination based on a review of the entire record. *In re T.T.*, 228 S.W.3d 312, 316 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). In evaluating the trial court's exercise of discretion, we generally defer to the trial court's resolution of underlying facts and credibility determinations, and we do not substitute our own judgments in its place. *In re Vogel*, 261 S.W.3d 917, 925 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). The trial court is best situated to observe and assess witnesses' demeanor and credibility and "to understand influences on the family dynamic that cannot be discerned by mere reference to the record." *Messier v. Messier*, 389 S.W.3d 904, 908-09 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In this context, challenges to the legal or factual sufficiency of the evidence are not independent grounds of error but are relevant considerations in assessing whether the trial court abused its discretion. *In re Marriage of Harrison*, 557 S.W.3d at 121. "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision." *In re R.T.K.*, 324 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

There is a strong presumption that the best interest of a child is served if a natural parent is appointed as the child's managing conservator. *See* Tex. Fam. Code Ann. § 153.131(a); *In re K.S.*, 492 S.W.3d at 426-27. "That presumption is removed, however, if the trial court makes a finding of a history of family violence." *Baker v. Baker*, 469 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.]

8

2015, no pet.). Specifically, the trial court may not appoint a parent as a managing conservator if "credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against . . . a child". Tex. Fam. Code Ann. § 153.004(b); *In re K.S.*, 492 S.W.3d at 427.

The Texas Family Code does not define "history," but a single act of violence or abuse suffices to show a history of physical abuse. *See Baker*, 469 S.W.3d at 274. As part of this determination, the trial court also shall consider whether a protective order was entered against the parent in the two-year period preceding the filing of suit or during the pendency of the suit. *See* Tex. Fam. Code Ann. § 153.004(f); *In re C.F.*, 565 S.W.3d 832, 846 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

## B. Application

In its findings of fact and conclusions of law, the trial court found that "[t]here is credible evidence of a history or pattern of past or present child neglect and physical abuse by [Mother] directed against [Mary]." *See* Tex. Fam. Code Ann. § 153.004(b). The record contains evidence sufficient to support this finding.

According to Great-Grandmother's testimony at the bench trial, Child Protective Services first became involved with Mary's care in 2014, when Mary was one year old. At this time, Great-Grandmother said Mary moved in with her and stayed with her through 2015. After 2015, Mary "lived with [Mother], but . . . was mostly staying with" Great-Grandmother. Great-Grandmother said Mary would stay with her at least six days a week, and that she would take Mary to school, activities, and doctor's appointments. Great-Grandmother said Mary would spend the remainder of the time with Mother.

Great-Grandmother said that, in July 2019, she saw a bruise on Mary's face

that looked like Mary "had gotten hit with a belt across her face." Great-Grandmother also recalled seeing bruises on Mary's neck, back, and thighs. The following evidence was admitted during this line of testimony: (1) pictures of Mary showing bruises on her face, neck, and back; (2) the complaint charging Mother with felony injury to a child; (3) a high bond request issued in connection with the felony charge stating that Mother "has a history of violence"; and (4) the emergency protective order prohibiting Mother from contacting or communicating with Mary.

According to Great-Grandmother, this was not an isolated incident of abuse. Great-Grandmother testified that Mother also "slap[s]" Mary, tells her "she stinks", and calls her expletives.

Also admitted into evidence was an August 2018 complaint charging Mother with misdemeanor terroristic threat for "threaten[ing] to commit an offense involving violence, namely assault," against Mother's sister. The "Probable Cause" section of the complaint includes the following statements: (1) Mother verbally threatened to "beat" her sister; (2) this statement placed Mother's sister in fear because "two days prior, [Mother] struck [Grandmother] with a motor vehicle"; and (3) during this incident, Mother also attempted to strike her sister with the motor vehicle. In connection with this incident, a protective order was entered in September 2018 prohibiting Mother from contacting Grandmother. The protective order also states that Mother was arrested for aggravated assault of a family member. Admitted into evidence were pictures of Grandmother, which show her in a hospital bed with a large cast on her leg. According to Great-Grandmother, these injuries were sustained when Mother hit Grandmother with a car.

Great-Grandmother testified that this evidence showed Mother had "a

10

pattern and a history of family violence." Great-Grandmother agreed that it would be in Mary's "best interest . . . to be placed in [Great-Grandmother's] care from this moment forward." According to Great-Grandmother, Mary was likely to "suffer additional injuries if she is left in the care of [Mother]."

Testifying at trial, Mother said she did not cause the injuries to Mary photographed in July 2019. Mother said she "wasn't even in the home" when Mary sustained the photographed injuries. According to Mother, she did give Mary and Mary's sister "a whooping that day, [but] they didn't have no bruises on them." Describing this incident further, Mother said she "got a belt, and [] popped them on their behind, both of them." Mother agreed that her case for injury to a child was still pending.

Testifying about the 2018 incident with Grandmother, Mother said she "bumped" Grandmother with her truck. Mother said Grandmother fell to the ground after she was hit. Mother agreed that she pled guilty to assault in connection with the incident.

This evidence, considered together, is sufficient to support the trial court's finding that there was a history or pattern of past or present child neglect and physical abuse by Mother directed against Mary. *See* Tex. Fam. Code Ann. § 153.004(b). This finding prevented the trial court from appointing Mother as Mary's managing conservator. *See id*.; *In re K.S.*, 492 S.W.3d at 427.

The evidence also shows that Great-Grandmother has been primarily responsible for Mary since Mary was removed from Mother's home when she was one year old. This evidence supports the finding that appointing Great-Grandmother as Mary's sole managing conservator was in Mary's best interest. Therefore, the trial court did not abuse its discretion by appointing Great-Grandmother as Mary's sole managing conservator and by appointing Mother as

11

Mary's possessory conservator.

## CONCLUSION

We affirm the trial court's July 13, 2020 "Order in Suit Affecting the Parent-Child Relationship."


/s/     Meagan Hassan
        Justice


Panel consists of Justices Spain, Hassan, and Poissant.